IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JANECE MICKENS, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Civil Action No. 1:24-cv-1014 (PTG/IDD) |
| SERCO, INC., *et al.*, | ) ) ) |
| *Defendants*. | ) ) |

## MEMORANDUM ORDER

This matter is before the Court on Defendant Serco Inc.'s ("Defendant") Motion to Dismiss (Dkt. 7). Plaintiff Janece Mickens ("Plaintiff") is proceeding *pro se*. This matter has been fully briefed by the parties. On December 12, 2024, the Court heard oral argument and indicated that it would take the matter under advisement. Dkt. 38. For the reasons stated below, the Court will deny in part and grant in part Defendant's Motion (Dkt. 7).

### BACKGROUND[1]

Plaintiff, who is African American, was employed with Defendant from December 29, 2019, until her termination on March 13, 2023. Dkt. 1 ("Compl.") at 5–6. Plaintiff started her employment as a Senior Proposal Coordinator but, after a year, was promoted to the role of Proposal Manager. *Id.* at 2. Plaintiff performed well and received accolades for her work. *Id.* at 2, 18–19. Starting in late 2021, however, Plaintiff began to experience conflict.

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

The first conflict was with Ms. Stephanie Austin, who served in a Program/Project director role at Serco. *Id.* at 9, 30. In November 2021, Ms. Austin led a meeting regarding a specific proposal project and Plaintiff participated telephonically. *Id.* at 7. During the meeting, Ms. Austin placed Plaintiff on mute, interfering with Plaintiff's ability to advise the meeting attendees about certain details of the proposal. *Id.* at 7–8. At a different time, Ms. Austin expressed displeasure with Plaintiff about not being able to reach Plaintiff on Plaintiff's cell phone. *Id.* at 8. Ms. Austin then "pressured Plaintiff" about the status of Plaintiff's work on a document. *Id.* A different Serco employee later informed Plaintiff that, at the request of Ms. Austin, Plaintiff had been removed from the team working on a specific proposal project. *Id.* at 9. As a result of these events, Plaintiff "filed an ethics complaint because she felt harassed by Ms. Austin's behavior which did not align with the company's values or its Code of Professional Conduct." *Id.*

The second conflict was with Ms. Angela Brown-Sells, who also served in a Program/Project director role at Serco. *Id.* at 2, 30. Ms. Brown-Sells accused Plaintiff of calling her a derogatory term via instant messenger. *Id.* at 9. Plaintiff explained that she had not intended to use a derogatory term and that Plaintiff had mistyped a word. *Id.* at 9–10. Another Serco employee informed Plaintiff that, at the request of Ms. Brown-Sells, Plaintiff had been removed from the proposal pursuit team, as Ms. Brown-Sells had not found Plaintiff's apology sufficiently sincere. *Id.* at 10. As a result of these events, Plaintiff filed her "second ethics complaint." *Id.*

Lastly, Plaintiff had conflict with Ms. Rima Saleh, Vice President of Serco. *Id.* at 2. At a meeting with Ms. Saleh and another Serco employee, Plaintiff discussed various topics, including asking for a raise and Plaintiff's successes at work. *Id.* at 11–12. Ms. Saleh asked Plaintiff if Plaintiff had completed her Individual Development Plan, and Plaintiff admitted that she had not. *Id.* at 12. Ms. Saleh indicated that she had offered to mentor Plaintiff last year, but Plaintiff

responded that Ms. Saleh had stopped mentoring Plaintiff after Plaintiff had filed formal ethics complaints against Ms. Austin and Ms. Brown-Sells. *Id.* Ms. Saleh made clear that she did not want to speak about Plaintiff's issues with Ms. Austin and Ms. Brown-Sells. *Id.* After this encounter, Plaintiff suspected that this meeting with Ms. Saleh was not "casual" but actually related to the impending "Annual Employee Engagement Survey," which "offers a platform for employees to candidly express their opinions." *Id.* at 11, 13. After this meeting, on September 13, 2022, Plaintiff "filed her third Code of Professional Conduct complaint against Ms. Saleh for questionable senior leadership practices." *Id.* at 13.

In September 2022, Plaintiff was given a reassignment of handling a different proposal, which gave her additional responsibilities. *Id.* at 14. In December 2022, Plaintiff complained that it was unfair to hold her to the same standards as her peers because she carried additional responsibilities. *Id.* Following intervention from Human Resources, "it was acknowledged that . . . [P]laintiff should not have been held to the same work goals and objectives as her peers" given her additional duties. *Id.* On or around January 30, 2023, Plaintiff applied for short-term disability after being diagnosed with osteoarthritis. *Id.* at 27. Sometime thereafter, Plaintiff received approval for Family and Medical Leave Act ("FMLA") continuous leave and short-term disability. *Id.* at 14. On March 9, 2023, Plaintiff submitted an application to human resources complaining of "her supervisor's discriminatory treatment of her." *Id.* at 27.

On March 13, 2023, Serco notified Plaintiff that her employment was being terminated for "unsatisfactory work performance and conduct." *Id.* at 22, 28. She was also advised that the termination did not take effect until April 1, 2023. *Id.* at 22. This termination was four days after Plaintiff's supervisor was notified of Plaintiff's complaint to human resources regarding discriminatory treatment and seven days after Plaintiff's supervisor was notified that Plaintiff had

applied for short-term disability and FMLA leave. *Id.* at 27. On March 23, 2023, Plaintiff underwent total right hip replacement surgery. *Id.* at 22.

On September 26, 2023, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 35. On May 25, 2024, she received a Notice of Right to Sue. *Id.*

On June 5, 2024, Plaintiff filed the instant action. Compl. The Complaint asserts three causes of action: (1) "Violation of Title 1 of the Americans with Disabilities Act (ADA) of 1990 [–] Disability-based Harassment"; (2) "Willful Violation of the Family and Medical Leave Act (FMLA) of 1993 – Interference"; and (3) "Retaliatory Harassment under Title VII of the Civil Rights Act of 1964."[2] *Id.* at 26, 28–29. Plaintiff alleges that she was subject to "mockery, scourging, marginalization, ostracization, and a manner of treatment that harbored deep-seated organizational biases and inefficiencies." *Id.* at 4. She also alleges that the fact that she had no performance issues until the period right before her termination creates doubts about the "underlying motives" behind her discharge. *Id.* The Complaint also alleges that Serco deviated from its own progressive disciplinary and discharge procedures when it decided to terminate Plaintiff, in contrast to Serco electing to demote another employee who failed to meet a $1,000,000,000 proposal deadline. *Id.* at 3.

---

[2] At oral argument, in response to the Court's questions, Plaintiff appeared to assert that her legal theory was that Serco terminated her because she complained that her encounters with Ms. Austin, Ms. Brown-Sells, and Ms. Saleh violated Serco's Code of Professional Conduct, not that her termination violated the ADA, FMLA, or Title VII. However, the Court "will not consider 'newly minted argument[s], made for the first time at oral argument'" and instead will examine the Complaint to determine whether it sufficiently states a claim for violation of the ADA, FMLA, and Title VII. *Fam. Health Physical Med., LLC v. Pulse8, LLC*, 105 F.4th 567, 573 n.3 (4th Cir. 2024) (alteration in original) (quoting *United States v. Clay*, 627 F.3d 959, 966 n.2 (4th Cir. 2010)).

On August 21, 2024, Defendant moved to dismiss the Complaint for failure to state a claim. Dkt. 7.

## LEGAL STANDARD

"A *pro se* complaint should survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim only when a plaintiff has set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 932 (E.D. Va. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "A *pro se* complaint should be liberally construed." *Taylor*, 841 F. Supp. 2d at 933; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, a court is not required 'to accept as true a legal conclusion couched as a factual allegation,' or a legal conclusion unsupported by factual allegations." *Taylor*, 841 F. Supp. 2d at 933 (first quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); then citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)). "Dismissal is appropriate when a complaint contains a description of underlying facts that fails to state a viable claim." *Id.*

## ANALYSIS

### A.  ADA Claims

Construing the Complaint liberally, it appears that Plaintiff is asserting both an ADA harassment claim as well as an ADA retaliation claim. Specifically, the Complaint alleges that "retaliatory harassment . . . escalated after [Plaintiff] received approval for . . . Short-Term Disability due to a medically necessary health condition certified by her healthcare provider." Compl. at 14. In addition, although presented as an ADA harassment claim, Count One actually

alleges that Plaintiff was terminated in retaliation for her disability, which required "a reasonable accommodation and major surgery to treat." *Id.* at 27. The Court will address both.

*ADA Harassment*

To state an ADA harassment claim, a plaintiff must allege facts showing: that "(1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). The "severe or pervasive" standard is a "high bar." *Burton v. Maximus Fed.*, No. 3:20-cv-955, 2021 WL 1234588, at *4 (E.D. Va. Apr. 1, 2021) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). A court looks at the totality of the circumstances to determine whether conduct is severe or pervasive, including: the frequency and severity of the conduct; whether the conduct was "physically threatening or humiliating," rather than a "mere offensive utterance"; or whether the conduct unreasonably interfered with the plaintiff's work performance. *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)).

Here, Plaintiff contends that the harassment was her receipt of an email from a supervisor that outlined deficiencies in Plaintiff's work performance. Compl. at 15. Plaintiff also contends that she "received minimal support" from this same employee on a work project. *Id.* In addition, Plaintiff claims that the same Serco employee "demanded a doctor's note for a single day of sick leave taken . . . for pre-surgery medical clearance" and that Plaintiff had never before been required to provide such a note to use sick leave. *Id.* at 21. However, this "discriminatory behavior that [Plaintiff] alleges in the complaint— . . . general tension with her colleague[]—amounts to no more than workplace disagreements and frustrations with management decisions." *Burton*, 2021

6

WL 1234588, at *4 (granting motion to dismiss ADA harassment claim where alleged discriminatory conduct was one-time threat to discourage use of FMLA, delayed adjustment of work records, rude comments from supervisor, and general tensions with colleagues). Accordingly, the Court finds that Plaintiff has failed to state an ADA harassment claim and will dismiss this claim.

*ADA Retaliation*

Plaintiff alleges that her termination was retaliation prohibited by the ADA. *See* Compl. at 27. Specifically, Plaintiff alleges that she "was terminated . . . less than a month after she applied for short-term disability" and that "[t]he temporal proximity of these actions is persuasive evidence that [Defendant] unlawfully terminated plaintiff in retaliation for her request for disability[,] which required reasonable accommodation and major surgery to treat." *Id.* For the reasons below, the Court finds that Plaintiff has alleged facts sufficient for her ADA retaliation claim to survive a motion to dismiss.

To state a claim for wrongful retaliation under the ADA, a plaintiff must allege (i) that she engaged in protected activity; and, (ii) because of the activity; (iii) her employer took an adverse employment action against her. *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 445 (E.D. Va. 2022) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015)). "Protected activity under the ADA includes filing an EEOC complaint . . . and submitting a request for accommodation." *Id.* Specifically, requests for disability-related leave can constitute protected activity. *Works v. Colvin*, 93 F. Supp. 3d 405, 417 (D. Md. 2015) (finding that plaintiff had established a prima facie case for a retaliation claim under the Rehabilitation Act when plaintiff alleged that she requested disability-related leave), *aff'd sub nom. Works v. Berryhill*, 686 F. App'x 192 (4th Cir. 2017). A "[p]laintiff is not required to prove that the opposed conduct was actually

7

an ADA violation, but merely that there was 'a reasonable, good faith belief' that the conduct violated the ADA. *Jordan*, 640 F. Supp. 3d at 445 (quoting *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002)).

Here, Plaintiff alleges that she "received approval for . . . Short-Term Disability due to a medically necessary health condition certified by her healthcare provider" in January 2023. *Id.* at 14. Thus, she alleges that she engaged in protected conduct. Plaintiff identifies an adverse employment action: she was notified of her termination on March 13, 2023, although the termination did not take effect until April 1, 2023. *Id.* at 22, 28. Additionally, Plaintiff alleges that about one and one-half months passed between her protected activity—applying for short-term disability—and being informed of her termination. There were also approximately two months between the protected activity and Plaintiff's effective termination date. This temporal proximity is sufficient to establish causation at the motion to dismiss stage. *Coursey v. Univ. of Md. E. Shore*, 577 Fed. App'x. 167, 175 (4th Cir. 2014) ("[T]he seven-month period between [protected activity and retaliation] supports an inference of retaliatory motive."); *White v. Bio-Med. Applications of S.C., Inc.*, 2024 WL 911520, at *5 (D.S.C. Mar. 4, 2024) (finding that plaintiff had established a prima facie ADA retaliation claim when there was a two-month period between the protected activity and adverse action). Thus, the Court finds that Plaintiff has sufficiently stated an ADA retaliation claim and denies Defendant's motion as to the ADA retaliation claim.

The Court is unpersuaded by Defendant's arguments as to Plaintiff's ADA retaliation claim. Defendants rely on *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228 (4th Cir. 2016), for the proposition that a but-for causation standard applies in ADA cases. *See* Dkt. 8 at 7. That case was at a different stage than the ADA claim here. *Gentry*, 816 F.3d at 233 (finding that

the district court correctly instructed the jury that the plaintiff had to demonstrate that her disability was the 'but-for' cause of her termination."). Additionally, the Fourth Circuit noted that disability need not be the only or sole cause of the plaintiff's termination. *Id.* at n.5. The other cases that Defendant cites are cases that were before the court on summary judgment, not a motion to dismiss. *See* Dkt. 8 at 11; *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 301 (4th Cir. 2006) (motion for summary judgment); *Racklin v. Zeta Glob. Corp.*, 628 F. Supp. 3d 625, 633 (E.D. Va. 2022) (same), *aff'd*, No. 22-2077, 2023 WL 5165281 (4th Cir. Aug. 11, 2023); *Gill v. Genpact, LLC*, No. 1:17-cv-454, 2017 WL 5319938, at *1 (E.D. Va. Nov. 13, 2017) (same).

Accordingly, the Court finds that Plaintiff has sufficiently stated an ADA retaliation claim for the motion to dismiss stage.

### B. FMLA Claim(s)

Plaintiff also appears to allege, construing the Complaint liberally, FMLA interference and FMLA retaliation claims. Plaintiff contends that she applied for FMLA leave and was terminated a "mere ten days" before she was scheduled to go on leave. Compl. at 28. She also asserts that she was terminated "less than a month" after she applied for FMLA leave. *Id.* at 25. The Court will address each claim in turn.

*FMLA Retaliation*

Plaintiff appears to allege an FMLA retaliation claim. *See* Compl. at 28. Specifically, Plaintiff alleges that she "applied for FMLA leave due to a serious health condition on or about January 30, 2023," and "was terminated for 'poor work performance and conduct' on March 13, 2023." *Id.* For the reasons that follow, the Court finds that Plaintiff has alleged facts sufficient to state an FMLA retaliation claim.

"[T]o succeed on [an FMLA] retaliation claim, [Plaintiff] must first make a prima facie showing 'that [s]he engaged in protected activity, that the employer took adverse action against h[er], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). "But '[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement.'" *Lloyd v. Baltimore Police Dep't*, 2024 WL 4264902, at *4 (D. Md. Sept. 23, 2024) (alteration in original) (quoting *Tutt v. Wormuth*, 2021 WL 4076729, at *1 (4th Cir. Sept. 8, 2021)). "'Thus, a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss' in the context of a retaliation claim under Title VII (or, therefore, under the FMLA)." *Id.* (quoting *Tutt*, 2021 WL 4076729, at *1). However, the prima facie standard is relevant in evaluating a motion to dismiss. *See id.*

For an FMLA claim, "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). Indeed, "temporal proximity between an employee's use of FMLA leave and subsequent termination gives rise to a reasonable inference of causation." *Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 758 (E.D. Va. 2011), *aff'd*, 474 F. App'x 167 (4th Cir. 2012); *see Lloyd v. Baltimore Police Dep't*, 2024 WL 4264902, at *5 (D. Md. Sept. 23, 2024) (concluding "that Lloyd has sufficiently alleged at least one adverse action and *causation through the temporal proximity between Lloyd's protected activities and the alleged adverse actions*" and denying motion to dismiss plaintiff's FMLA retaliation claim (emphasis added)).

Here, Plaintiff has sufficiently alleged, in order to survive a motion to dismiss, facts to establish all three elements of an FMLA retaliation claim. Plaintiff alleges that (1) she engaged in

protected activity—applying for FMLA leave; and (2) that she suffered an adverse employment action—termination. Plaintiff alleges that she "applied for FMLA leave due to a serious health condition on or about January 30, 2023." Compl. at 28. She was informed of her termination on March 13, 2023. *Id.* at 22, 28. Thus, there is about a one and one-half month period between the day Plaintiff applied for FMLA leave and her being informed that she was terminated. The Court finds that the close temporal proximity between these events is sufficient to allege causation.

Defendant cites to several cases and focuses on the fact that Plaintiff's performance issues already predated her application for FMLA. Dkt. 8 at 11. The Court notes, however, that those cases are at the summary judgment stage. *See id.* For pleading purposes, the Court finds that Plaintiff has sufficiently stated an FMLA retaliation claim and will deny Defendant's motion as to this claim.

### *FMLA Interference*

To the extent Plaintiff attempts to raise an FMLA interference claim, the Court finds that Plaintiff has alleged sufficient facts to do so. To establish an FMLA interference claim, "an employee must demonstrate (1) that [s]he is entitled to an FMLA benefit; (2) that h[er] employer interfered with the provision of that benefit; and (3) that the interference caused h[er] harm." *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023). Defendant does not dispute that Plaintiff is entitled to an FMLA benefit but argues only that Plaintiff has not alleged that Defendant interfered with Plaintiff's FMLA benefits or that she suffered any harm as a result. Dkt. 8 at 10. Specifically, Defendant argues that Plaintiff "does *not* allege that Serco denied her FMLA leave." *Id.* Defendant also contends that Plaintiff remained employed while she was on FMLA leave, as she had surgery on March 23, 2024, and her termination was not effective until April 1, 2024. *Id.*

The Court concludes that Plaintiff has sufficiently alleged an FMLA interference claim. First, the Court notes that the fact that an employer approves an employee's request for FMLA leave "does not automatically foreclose [an] interference claim." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 303 n.5 (4th Cir. 2016). An interference claim under the FMLA is similar to an FMLA retaliation claim, but "the interference claim merely requires proof that the employer denied the employee h[er] entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). A plaintiff can state an FMLA interference claim by alleging that a defendant "terminated [p]laintiff to interfere with h[er] use of FMLA leave, leave [s]he would have been entitled to absent interference by termination." *Sewel v. Am. Tire Distributors, Inc.*, 2022 WL 3969941, at *2 (W.D.N.C. Aug. 30, 2022) (denying defendant's motion for summary judgment on FMLA interference claim). Construing the Complaint liberally, Plaintiff has alleged just that—that Defendant interfered with her FMLA leave, which she would have been entitled to absent her termination. Compl. at 28–29. Thus, the Court finds that Plaintiff has sufficiently stated an FMLA interference claim.

### C. Title VII Claim(s)

Plaintiff brings a claim for "Retaliatory Harassment under Title VII of the Civil Rights Act of 1964." Compl. at 29. However, Defendant argues that Plaintiff failed to exhaust her administrative remedies for her Title VII claim because the charge Plaintiff filed with the EEOC did not contain allegations that Defendant violated Title VII. Dkt. 8 at 11–12. For the reasons set forth below, the Court finds that Plaintiff has failed to exhaust her administrative remedies for any Title VII claim and will dismiss such claims with prejudice.

"Title VII prohibits employers from 'discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin.'" *Gentry*, 816 F.3d at 233 (alteration in original) (quoting 42 U.S.C. § 2000e–2(a)). "[T]he elements of a . . . Title VII [discrimination claim] are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and[,] (4) different treatment from similarly situated employees outside the protected class." *Burr v. Campbell*, No. 3:21-cv-403, 2022 WL 982236, at *4 (E.D. Va. Mar. 30, 2022) (alteration in original) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

"It is well settled that before filing suit under Title VII . . . , a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Id.* (quoting *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014)). "[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.* (alteration in original) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)). "If the discrimination claims 'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Id.* (quoting *Chacko*, 429 F.3d at 509).

Here, the Court finds that Plaintiff has failed to exhaust her administrative remedies because the EEOC charge she filed does not contain factual allegations from which a Title VII

claim could naturally arise. *See* Dkt. 8-1.[3] Plaintiff's charge states that: "I believe I was discriminated against on the basis of my disability and retaliated against for engaging in protected activity, in violation of the Americans with Disability Act of 1990, as amended."[4] *Id.* at 2. The EEOC charge does not indicate whether Plaintiff is a member of any class protected under Title VII. Such a statement is insufficient to have put Defendant on notice of any Title VII claim against it and to have given Defendant the opportunity to address such a claim before the EEOC, as is the purpose of the exhaustion requirement. *See Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 569 (E.D. Va. 2009) ("[S]uch exhaustion requirement was intended by Congress to serve the primary purposes of notice and conciliation.'" (quoting *Chacko*, 429 F.3d at 510)). Thus, the Court finds that Plaintiff has failed to exhaust her administrative remedies as to her Title VII claim and will dismiss this claim with prejudice. *See Blankumsee v. Maryland*, 2020 WL 5076051, at *3 (D. Md. Aug. 27, 2020) ("[E]ven if the Court were to permit [Plaintiff] to amend his claims, such amendment would prove futile because he has not exhausted his administrative remedies . . . .").

---

[3] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, [the Fourth Circuit] ha[s] held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Here, the EEOC charge is both integral to the Complaint, relied upon by Plaintiff in the Complaint, and its authenticity is not challenged. *See* Compl. at 35 ("Plaintiff filed a charge with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct on September 26, 2023.")

[4] Plaintiff also filed an amended EEOC charge (Dkt. 8-2), which was attached to Defendant's memorandum in support of its Motion to Dismiss, and Plaintiff has not challenged the authenticity of the amended charge. The Court notes that the amended charge does not change the Court's conclusion that Plaintiff failed to exhaust her administrative remedies as to her Title VII claims.

### D. Leave to Amend

At the hearing, Plaintiff moved to amend her Complaint. "Motions for leave to amend should generally be granted in light of 'this Circuit's policy to liberally allow amendment.'" *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). "However, a district court may deny leave to amend 'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Given that leave to amend should be liberally granted, the Court will grant Plaintiff leave to amend her ADA harassment claim. However, as stated above, amendment of Plaintiff's Title VII claim(s) would be futile as she has failed to exhaust her administrative remedies as to any Title VII claims. There have been no allegations of bad faith on Plaintiff's part, and the Court finds that prejudice to Defendant is minimal as Plaintiff has not yet filed an amended complaint in this action.[5]

### E. Failure to Serve Remaining Defendants

From a review of the docket, it appears that Defendants Serco North America, Serco Service Inc., and Serco-IPS Corporation were not served.

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time." But the Court "must extend the time for service for an appropriate

---

[5] Plaintiff untimely filed an "Amended Complaint" which she later withdrew. Dkts. 20, 31.

period" if the plaintiff can show "good cause for the failure" to timely serve a defendant. Fed. R. Civ. P. 4(m).

Here, Plaintiff filed the Complaint on June 5, 2024. Well over ninety (90) days have passed since Plaintiff filed the Complaint. Thus, the Court will order Plaintiff to show cause why the remaining defendants were not timely served.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has (1) failed to state an ADA harassment claim; (2) sufficiently stated an ADA retaliation claim; (3) sufficiently stated an FMLA interference claim; (4) sufficiently stated an FMLA retaliation claim; and (5) failed to exhaust her administrative remedies as to any Title VII claim. The Court further finds that amendment of any Title VII claims would be futile, but will give Plaintiff leave to amend her ADA harassment claim. In addition, the Court finds that Plaintiff failed to timely serve Defendants Serco North America, Serco Service Inc., and Serco-IPS Corporation.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 7) is **GRANTED in part** and **DENIED in part**. Plaintiff's ADA harassment claim is **DISMISSED without prejudice**. Plaintiff's ADA retaliation claim, FMLA interference claim, and FMLA retaliation claim remain pending; it is further

**ORDERED** that Plaintiff's Title VII claim(s) are **DISMISSED**; it is further

**ORDERED** that, as it appears to the Court that no service of the Complaint on Defendants Serco North America, Serco Service Inc., and Serco-IPS Corporation has been effected within ninety (90) days of the filing of the Complaint, within fourteen (14) days of the date of this Order,

Plaintiff show cause, if any, why this civil action should not be dismissed as to the unserved defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; it is further

**ORDERED** that Plaintiff's Motion to Amend (Dkt. 39), which Plaintiff filed while the instant motion was pending, is **DENIED**, without prejudice; and it is further

**ORDERED** that Plaintiff shall have twenty-eight (28) days from the date of this Order to file any amended complaint.

Entered this 27th day of March, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge